IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARL DUNCAN, JR., et al.           *

    Plaintiffs                              *

v.                                              *           Civil Action No.  WMN-03-380

GULF STREAM COACH, INC.       *

    Defendant                            *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS OR TO TRANSFER**

Now comes the Defendant, Gulf Stream Coach, Inc., by J. Thomas Caskey, its attorney, and files this supplemental memorandum in support of its motion to dismiss or to transfer and states:

**Facts**

For purposes of this discussion, defendant does not contest plaintiffs' claim that their names were signed to the limited warranty agreement by someone else.  In fact, it appears that whoever signed their names initialed both signatures as well.  The limited warranty agreements were then sent to the Duncans by mail.  Thus, there is no question that the Duncans received the limited warranty agreement.  (See pages 20-21 of Carl Duncan's deposition, attached hereto as Exhibit A.)  According to Mr. Duncan, he received the warranty agreement within thirty (30) days after delivery of the vehicle.

Despite the fact that he claims to have been upset that someone signed his and his wife's name to the limited warranty agreement, not only did he not rescind the sales contract or the warranty agreement, but in fact had a substantial amount of work done, free of charge, pursuant to this very warranty agreement.  The affidavit of Anthony Suddon, Director of Consumer Affairs for Gulf Stream, is attached hereto as Exhibit B, and establishes that on eight (8) separate occasions from May 12, 2000 to September 6, 2002, repairs were done to the vehicle at Gulf Stream's expense, pursuant to the warranty agreement.

These repair orders are attached to Mr. Suddon's affidavit. These repairs were done at the Duncans' request and at no charge to them, all pursuant to the limited warranty agreement. (See Suddon affidavit.)

There is no question that the Duncans had a valid contract with Gulf Stream for the purchase of the vehicle. There is also no question that the limited warranty agreement was supplied to them as part of the contract documents. Further, there is no question that the Duncans relied on the limited warranty agreement and accepted the benefits of it in obtaining warranty service and repairs, at Gulf Stream's expense and at no cost to them.

### Implied Contract

By so accepting the benefits of the limited warranty agreement, as well as accepting the vehicle, the Duncans, by implication, accepted the terms of the limited warranty agreement.

> "An implied contract is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men."

County Comm'rs of Caroline County v. J. Rowland Dashiell & Son, Inc., 358 Md. 83, 94, 747 A.2d 600, 606 (2000) (citations omitted.) (See also Public Service Commission v. Highfield Water Co., 293 Md. 1, 441 A.2d 1031 (1982) in which the Maryland Court of Appeals, upon certification of a question from the United States District Court, discussed a number of circumstances under which contracts have been implied.)

> "'A contract implied in fact,' or an implied contract in the proper sense, arises where the intention of the parties is not expressed but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract."

CJS, Implied Contracts, § 3, citing Klebe v. U.S., 44 S. Ct. 58, 59, 263 U.S. 188, 68 L.Ed. 244.

In the present case, despite their protestations, the Duncans clearly acted as if the limited warranty agreement were in full force. They requested warranty service and accepted it on at least eight

(8) occasions. By requesting and accepting the benefits of the warranty agreement, they created circumstances which would be reasonably understood to mean that they relied on and accepted the terms of the limited warranty agreement. They could hardly expect that the warranty was a one-way street, that they could rely upon it and benefit from it without being bound by its terms. What other reasonable inference could arise from the Duncans repeatedly obtaining service and repairs free of charge pursuant to the warranty agreement? The Duncans certainly could not expect Gulf Stream to continue to provide them with warranty service and repairs pursuant to the warranty agreement if Gulf Stream did not understand that the warranty agreement was in full force and effect. Thus, in accordance with "the ordinary course of dealing and the common understanding of men," the only reasonable inference that could be inferred from the actions of the Duncans was that the warranty agreement was in full force and effect. Dashiell, supra.

### Estoppel

Finally, plaintiffs are barred by principles of estoppel from denying that they are bound by the terms of the limited warranty agreement. Estoppel arises when a party by his conduct misleads another into relying to his detriment on a non-existing state of affairs. In such case, the estopped party would then be barred from taking a position inconsistent with circumstances upon which the other party relied. Borg-Warner Acceptance Corp. v. Rossi, 365 F. Supp. 56, aff'd 485 F.2d 1388 (D.C. Md. 1972). The concept of estoppel is derived from the court of equity's duty to do justice and depends upon the facts and circumstances of each case. Biser v. Town of Bel Air, 991 F.2d 100, cert. denied 114 S. Ct. 182 (1993). Moreover, it is not necessary that the party's conduct be egregious or have been done intentionally to mislead in order for estoppel to apply. C&P Telephone Co. v. Scott, 77 Md. App. 121, 549 A.2d 425, cert. denied, 314 Md. 496, 551 A.2d 867 (1988).

In the present case, the Duncans' conduct that gives rise to estoppel is their requesting and receiving service and repairs under the limited warrant agreement on at least eight (8) separate occasions. This was to the detriment of Gulf Stream in that Gulf Stream either made the repairs or paid for them, without charge to the Duncans. Gulf Stream does not assert that the Duncans acted to intentionally mislead, but that is not required. By their conduct, the Duncans relied upon and accepted the benefits of the limited warranty agreement. Under equitable principles, they should not now be permitted to avoid the clear terms of that agreement.

Adamstown Canning & Supply Co. v. B & O R.R. Co., 137 Md. 199, 112 A. 286 (1920) is instructive. In that case, the B&O contracted with the Adamstown Packing Company of Frederick County to build a railroad siding for that company's use as a shipper. That contract contained an indemnification and hold harmless clause by which Adamstown agreed to indemnify and hold harmless the B&O for fire damage caused by B&O's cars. It was subsequently determined that because of its failure to pay a bonus tax as required by law, Adamstown was not a legal corporation. Its shareholders then formed a new company called Adamstown Canning and Supply Company and carried on the business. Several years later, Adamstown Canning and Supply Company sustained fire damage to its property on the siding in question, caused by sparks from B&O's engines. Despite the fact that Adamstown Canning and Supply Co. was not a party to the original contract, the Court of Appeals held that because it continued to receive the benefits of that contract, with full knowledge of its terms, it was estopped from denying that it was bound by the hold harmless clause of the contract. Similarly, we have in the present case a contract signed by one of the parties but not the other, but one with which the non-signing parties were familiar. Moreoever, as in Adamstown, the Duncans continued to request and receive the benefits provided by the warranty agreement in this case, over a period of more than two years. Having received the benefits of the agreement, with knowledge of its terms, they are now estopped from denying the terms of that agreement which do not suit them.

        J. Thomas Caskey, Fed Bar #00576
        401 Washington Avenue
        Suite 204
        Towson, Maryland 21204
        (410)821-6353
        Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of July, 2003, a copy of Defendant's Supplemental Memorandum in Support of Motion to Dismiss or Transfer was mailed, first class, postage prepaid, to:

Jeffrey N. Pritzker, Esquire
Margolis, Pritzker & Epstein
405 E. Joppa Road
Suite 100
Towson, Maryland   21286
Attorneys for Plaintiffs

        J. Thomas Caskey